## Case No. 15,818.

UNITED STATES v. MORRISON et al.

[1 Summ. 448.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1833.

SEAMEN—ENDEAVOR TO COMMIT REVOLT.

1. Where the master directed one of his crew to be punished for gross misbehavior, and the crew interposed and prevented the infliction of the punishment, compelling the master, by acts of violence and intimidation, to desist therefrom; held, to be an endeavor to commit a revolt within the act of congress of 1790, c. 36 (9), § 12 [1 Story's Laws, 85 (1 Stat. 115)]. [2]

[Cited in Talcott v. Pine Grove, Case No. 13,-735.]

2. Neither a previous deliberate combination for mutual aid and encouragement, nor any preconcerted plan, is necessary to bring it within the act.

Indictment [against John Morrison and others] for an endeavor to commit a revolt on board of the ship United States. Plea, not guilty. At the trial the evidence was briefly as follows: On the 8th of August, 1833, Dutton, one of the crew, on account of his gross misconduct, was ordered by Webb (the master of the ship) to be put in irons. The mate attempted to do it, and Dutton made resistance. The mate, however, got Dutton down in the scuffle, and was proceeding to put on the irons. The crew then came aft together, some of them having handspikes in their hands, and others having chisels, knives, or mallets; and said, that the master should not put any man on board the vessel in irons. The master said he would; and they continued to say he should not. The prisoners at the bar were part of the crew, and present, and apparently co-operating with the others. The master then attempted to keep them off; and proceeded to tie Dutton's feet with a line. Murphy (one of the prisoners) cut the line from his feet. Morrison (another of the prisoners), who was at the helm, left it, and another person took it. Morrison then ran towards the master, and struck him. In the mean time the crew dragged Dutton away forward from the mate. And the master, finding the resistance general among the crew, thought it his duty to proceed no farther, and made no more resistance to the rescue of Dutton.

Mr. Parke, for defendants, contended, that the evidence was not sufficient to establish any combination or concerted plan of the crew for mutual assistance in the interference or rescue; and that it was merely a sudden affray without combination or design. He cited U. S. v. Smith [Cases Nos. 16,344 and 16,345].

Mr. Dunlap, Dist. Atty., contended, e contra, that the evidence clearly established

the offence charged in the indictment; and he cited U. S. v. Hemmer [Case No. 15,345]; U. S. v. Smith [Id. 16,337]; U. S. v. Haines [Id. 15,275].

STORY, Circuit Justice, in summing up to the jury, said: To constitute the offence of an endeavour to commit a revolt, in the sense of the act of congress of 1790, c. 36 (9), § 12 [1 Story's Laws, 85 (1 Stat. 115)], something more is necessary than bare disobedience or resistance by a seaman to the lawful authority, commands, or proceedings of the commanding officer of the ship. There must be a designed combination or co-operation with others in such disobedience or resistance; or some attempt or endeavour to procure it; or some assistance, aid, or encouragement to others in such disobedience or resistance. In short, there must be some effort to excite, or inveigle, or engage others in such illegal acts; or some aid or encouragement promised or given in furtherance of them. But it is by no means necessary, that there should be any previous deliberate combination for mutual aid and encouragement, or any preconcerted plan of operations to effect the illegal object. However sudden may be the occurrence, or unexpected the occasion, of such disobedience, or resistance, those, who take a part in it, whether by words or by deeds, by direct acts of aid or assistance, or by encouragement or incitement, are in contemplation of law guilty of the offence. Their conduct, under such circumstances, amounts to an endeavour to commit a revolt by overthrowing, pro hac vice, the lawful authority of the commanding officer of the ship. Thus, to apply the doctrine to the present case, if the master of the ship should direct a seaman to be punished reasonably for his misconduct, and the crew should interfere to prevent the infliction of the punishment by attempting a rescue; or by other acts of violence; or by intimidation or threats; such acts would in contemplation of law amount to an endeavour to commit a revolt. They would operate directly to suspend the exercise of the lawful authority of the master on board of the ship. And those of the crew, who should stand by, exciting or encouraging those, who were actually engaged in such illegal interference, would be equally guilty with the immediate actors. The only question, then, in the present case, is, whether the facts bring the defendants, or any of them, within the reach of these principles. It appears from the evidence, that the master directed one of the seamen to be punished for gross misbehavior. The crew interfered, and prevented the infliction of the punishment, and rescued the party. The master was ultimately compelled to relinquish his intention of punishment by the acts of violence, intimidation, and threats of the crew. All the defendants were present, and (as the witnesses say) co-operated

---

[1] [Reported by Charles Sumner, Esq.]

[2] It is an endeavor to commit a revolt, to combine to force the master of the ship to redress grievances. Rex v. Hastings, 1 Moody, Crown Cas. 82.

in the interference and rescue. Such is the state of the evidence; and it is for the jury to say, whether they believe it. If they do believe it, then the court have no difficulty in saying, that in point of law the defendants are guilty of the offence charged in the indictment.